IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
KENNETH D. THOMAS          )
                           )
     v.                    )    NO. 3:08-0274
                           )
JAMES FORTNER, WARDEN      )
```

TO: Honorable Robert L. Echols, District Judge

### R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered June 10, 2008 (Docket Entry No. 14), the above captioned Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254 was referred to the Magistrate Judge for further proceedings under Rule 8(b), Habeas Corpus Rules, 28 U.S.C. § 636(b)(1)(B), and Rule 7 of the Local Rules for Magistrate Judges.

Presently pending before the Court is Petitioner's Motion (Docket Entry No. 20) for Summary Judgment, to which Respondent has not filed a response.[1] Also before the Court is Respondent's Motion (Docket Entry No. 34) to Dismiss, to which Petitioner has filed a response in opposition (Docket Entry No. 39). Set out below is the Court's recommendation for disposition of the motions.

---

[1] By Order entered September 24, 2008 (Docket Entry No. 23), the Court took Petitioner's Motion for Summary Judgment under advisement, pending an answer by Respondent.

## I. BACKGROUND

Petitioner is an inmate of the Tennessee Department of Correction ("TDOC") incarcerated at the Turney Center Industrial Prison in Only, Tennessee, where he is serving a term of life imprisonment after being convicted on October 16, 2003, of felony murder by a jury in Davidson County, Tennessee.

In January 2002, Petitioner was charged with bank fraud in the Eastern District of Kentucky and was held in Kentucky as a federal pre-trial detainee. At the time, a federal arrest warrant from the Middle District of Tennessee was also outstanding related to an indictment issued in May 2001, on the charge of being a convicted felon in possession of a firearm. See United States v Kenneth D. Thomas, No. 3-01-00068. On April 24, 2002,[2] Petitioner was convicted by a jury of five counts of aiding and abetting bank fraud in the Eastern District of Kentucky and, on July 15, 2002, was sentenced to 32 months of imprisonment on these charges. See Addendum No. 1, Volume I (Docket Entry No. 13-1) 40; Petition (Docket Entry No. 1), at 2. Petitioner was thereafter transported to the Middle District of Tennessee on August 14, 2002, for an initial appearance and arraignment on the charge in the Middle District. During this court appearance, the Court found the

---

[2] Although the Tennessee Court of Criminal Appeals stated in its opinion denying Petitioner's direct appeal that he was convicted on January 4, 2002, see Addendum No. 2, Document No. 4 (Docket Entry No. 13-7), at 98, that date is not correct.

2

government's motion for detention to be moot because Petitioner was already in federal custody in the Eastern District of Kentucky. Petitioner was then returned to Kentucky. The federal charge in this District was ultimately dismissed by Order entered November 4, 2003. See United States v. Kenneth D. Thomas, No. 3-01-00068, at Docket Entry No. 43.

During the time Petitioner was being held in federal custody in Kentucky, indictments in two criminal cases were issued against him by the State of Tennessee in January and March, 2002, respectively, on charges of attempted first degree murder and felony murder. See Addendum No. 1, Volume I (Docket Entry No. 13-1), at 4-6 and 31. On May 31, 2002, a detainer for the state charges was lodged against him by the District Attorney General for Davidson County, Tennessee. See Petition, at Exhibit A.

On August 27, 2002, a writ of habeas corpus ad prosequendum was issued by the Davidson County Criminal Court ordering the Davidson County Sheriff's Department to take temporary custody of Petitioner and to transport him to Nashville, Tennessee, for court proceedings in the state criminal cases, see Docket Entry No. 13-1, at 44, and Petitioner appeared in the Davidson County Criminal Court on August 29, 2002, for his arraignment. Id. at 8. After his arraignment, Petitioner remained incarcerated in Tennessee at the Nashville Criminal Justice Center until he was convicted on the

3

charge of felony murder[3] for which he is currently imprisoned. See Addendum No. 2, Document No. 1 (Docket Entry No. 13-7), at 14.

Petitioner's direct appeal of his conviction was denied by the Tennessee Court of Criminal Appeals on March 3, 2006, and on October 30, 2006, the Tennessee Supreme Court denied his application for permission to appeal. See Petition, at Exhibits C and D.

On March 17, 2008, Petitioner filed the instant petition for federal habeas corpus relief under 28 U.S.C. § 2254 raising three grounds for relief:

1. Articles IV(c) and IV(e) of the Interstate Agreement on Detainers were violated resulting in a violation of his Due Process and Equal Protection rights;

2. his rights under the Fifth Amendment were violated because he was tried on an indictment that was void due to the violation of Article IV(e) of the Interstate Agreement on Detainers; and

3. his rights under the Sixth Amendment were violated because he was not given a speedy trial.

See Petition (Docket Entry No. 1), at 8.

Respondent's initial response to the petition was a motion (Docket Entry No. 11) to dismiss alleging that the petition was untimely filed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). By Order entered October 31, 2008 (Docket Entry No. 29), the motion was denied.

---

[3] It appears that the charges of attempted first degree murder were either dismissed or not pursued by the State of Tennessee.

4

## II. MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

By his motion for summary judgment, Petitioner argues the merits of his grounds for relief. He asserts that the facts of his action are essentially undisputed, and he contends that the law shows that he is entitled to relief because of the asserted violations of the Interstate Agreement on Detainers ("IAD").

Respondent, in its motion to dismiss, asserts that Petitioner has not exhausted his state remedies with respect to his claim that Article IV(e) of the IAD was violated. Arguing that the time for presentation of this claim to the state courts has now passed, Respondent contends that this claim is procedurally defaulted. See Memorandum in Support (Docket Entry No. 35), at 8-10.

Alternatively, Respondent argues that this claim, even if exhausted, does not entitle Petitioner to relief because the record shows that Petitioner remained incarcerated at the Nashville Criminal Justice Center in Davidson County, Tennessee, from the time he was transported to Tennessee on August 28, 2002, to the conclusion of his trial in October 2003. Respondent contends that Petitioner was never returned to his original place of imprisonment in Kentucky and, thus, there was no violation of Article IV(e) of the IAD. Id. at 10, n. 1.[4]

---

[4] In support of his contention that Petitioner remained at the CJC from his arraignment to the conclusion of his trial, Respondent refers to motions and other correspondences from Petitioner in his state criminal case in which Petitioner's address is listed as the CJC, see Docket Entry No. 13-7, at 45, 53-55, 57, 59, 69-71, 73-

5

With respect to Petitioner's claim that his right to a speedy trial under Article IV(c) of the IAD was violated, Respondent argues that Petitioner has not shown that the adjudication of this claim before the state courts resulted in a decision contrary to or involving an unreasonable application of federal law or resulted in a decision based on an unreasonable determination of facts in light of the evidence. Id. at 11-14.

### III. ANALYSIS

A. Exhaustion of Article IV(e) Claim

Exhaustion of available state remedies is a statutory requirement under 28 U.S.C. § 2254(b) and (c), and it is incumbent upon a petitioner seeking relief under 28 U.S.C. § 2254 to have first pursued and exhausted his claim of a federal, constitutional violation in the state courts prior to filing his habeas corpus petition. 28 U.S.C. § 2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509, 515-19, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); Cohen v. Tate, 779 F.2d 1181, 1184 (6th Cir. 1985). In order to qualify as

---

74, and 79, and to a letter in which Petitioner refers to a meeting with his defense attorney "in September of 2002." Id. at 55.
However, the Court finds there to be no real dispute about the fact that Petitioner was <u>physically incarcerated</u> at the CJC between his arraignment and the conclusion of his state trial since Petitioner admitted in his Motion for Summary Judgment that he was incarcerated at the CJC for fourteen (14) months after his arraignment. See Docket Entry No. 20, at 6, § I(B)(1).

6

exhausted, a claim must have been presented to the state's highest court, Hafley v. Sowders, 902 F.2d 480, 483 (6th Cir. 1990), and must have been presented in a form which allows the state court a full and fair opportunity to rule on the claim. Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 302-303, 104 S.Ct. 1805, 80 L.Ed. 2d 311 (1984); Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990).

Respondent contends that Petitioner's Article IV(e) claim was not exhausted because Petitioner's direct appeal to the Tennessee Court of Criminal Appeals did not include this claim as a ground for relief.[5] The Court's review of the appellate brief filed by Petitioner in his direct appeal confirms that the claim was not raised by Petitioner in his appellate brief. See Addendum No. 2, Document No. 1 (Docket Entry No. 13-7).

However, subsequent to the denial of his direct appeal, Petitioner raised the Article IV(e) claim in a petition for rehearing filed with the Tennessee Court of Criminal Appeals on March 16, 2006. See Addendum No. 2, Document No. 5 (Docket Entry No. 13-7), at 107. The petition was denied by the Tennessee Court of Criminal Appeals in a one paragraph order which reads as follows:

---

[5] Respondent essentially concedes that Petitioner exhausted his Article IV(c) claim, see Respondent's Memorandum (Docket Entry No. 35), at 11-14, but argues that Petitioner waived any rights under Article IV(c).

7

> This matter is before the Court upon Appellant's petition to rehear. See Tenn.R.App.P. 39. Having thoroughly reviewed the petition in light of the opinion filed on March 3, 3006 (sic), the Court finds the petition to be without merit. Accordingly, the Appellant's petition to rehear is hereby denied.

See Addendum No. 2, Document No. 6 (Docket Entry No. 13-7), at 109.

Petitioner subsequently raised the Article IV(e) claim before the Tennessee Supreme Court in his pro se application for permission to appeal. See Addendum No. 2, Document No. 7 (Docket Entry No. 13-7), at 155-156. The Tennessee Supreme Court denied the application for permission to appeal stating that "[u]pon consideration of the application for permission to appeal filed on behalf of Kenneth Deangelo Thomas and the record before us, the application is denied." See Addendum No. 2, Document 11 (Docket Entry No. 13-7), at 202.

Respondent does not address the import of either the petition for rehearing or the application for permission to appeal. See Docket Entry No. 35, at 8-10. Thus, the Court is left to wonder whether Respondent simply fails to recognize that the claim was included in these filings or whether Respondent believes that these two later filings are inconsequential.

Regardless, the Court finds that the Article IV(e) claim was exhausted by Petitioner's inclusion of the claim in his motion to rehear and in his application for permission to appeal to the Tennessee Supreme Court. The purpose of the exhaustion requirement is to give the state courts a fair opportunity to address any

8

federal errors in the first instance and to ensure respect for the principle of comity between the state and federal courts. See Rose, 455 U.S. at 515-516; Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Turner v. Bagley, 401 F.3d. 718, 724 (6th Cir. 2005). Even if the claim was not included in Petitioner's initial appellate brief, he sufficiently brought the claim to the attention of the state courts through his two later filings and gave the state courts a full and fair opportunity to rule on the claim. See Meeks v. Bergen, 749 F.2d 322, 325 (6th Cir. 1984). This is all that is required by the exhaustion requirement. See O'Sullivan v. Boerckel, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1(1999) The fact that the two state courts declined to address the merits of the claim does not mean that the claim was not presented to the state courts for the purposes of determining exhaustion. See Johnson v. Bell, 525 F.3d 466, 485 n.17 (6th Cir. 2008); Clinkscale v. Carter, 375 F.3d 430, 438 (6th Cir. 2004); Manning, 912 F.2d at 883.

B. Merits of IAD Claims

As explained by the Sixth Circuit Court of Appeals in Jenkins v. United States, 394 F.3d 407 (6th Cir. 2005):

> The IAD is a compact between forty-eight states, the Federal Government, and the District of Columbia. Alabama v. Bozeman, 533 U.S. 146, 148, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). The purpose of the agreement is to establish "cooperative procedures" to "encourage the expeditious and orderly disposition" of charges

outstanding in one jurisdiction against a prisoner who is "already incarcerated" in another jurisdiction. 18 U.S.C.App. 2, § 2, Art. I. The IAD facilitates the transfer of prisoners "to the receiving State for trial prior to the termination of his sentence in the sending State," and "it seeks to minimize the consequent interruption of the prisoner's ongoing prison term." Bozeman, 533 U.S. at 148.

394 F.3d at 412-13. Essentially, the IAD provides "the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges. Once he has filed a detainer against the prisoner, the prosecutor can have him made available ...." United States v. Mauro, 436 U.S. 340, 351-52, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

Contained within the IAD are protections for the prisoner against whom the detainer has been lodged. The two protections at issue in the instant action are the speedy trial provisions of Article IV(c), which provides:

> [i]n respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

See 18 U.S.C.App. 2, § 2, and the "anti-shuttling" provisions of Article IV(e), which provides:

> [i]f trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further

10

force or effect, and the court shall enter an order dismissing the same with prejudice.

Id.[6]

Petitioner contends that Article IV(c) and (e) were violated because he was not tried within 120 days after his arraignment and because he was returned to the custody of the United States Marshal after his arraignment. Respondent argues that both claims should be dismissed on their merits.

However, resolving the parties' conflicting arguments is unnecessary because the IAD violations raised by Petitioner do not present cognizable grounds for habeas corpus relief under Section 2254. See Reed v. Farley, 512 U.S. 339, 352, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (addressing Article IV(c) claim); Browning v. Foltz, 837 F.2d 276, 283 (6th Cir. 1988) (addressing Article IV claims); Metheny v. Hamby, 835 F.2d 672 (6th Cir. 1987) (addressing Article IV(e) claim).

Petitioner recognizes this determinative legal principle, and he cites Stroble v. Anderson, 587 F.2d 830 (6th Cir. 1978), as well as several cases from other federal circuits and other states,in support of his assertion that violations of the IAD can be addressed via habeas corpus relief under Section 2254. See Brief in Support of the Petition (Docket Entry No. 2) at 15-18. In light

---

[6] The State of Tennessee adopted the provisions of the IAD in the Interstate Compact on Detainers Act, Tenn. Code Ann. § 40-31-101.

11

of the clear pronouncements in Reed, Browning, and Matheny that IAD claims such as the ones raised by Petitioner are not cognizable under Section 2254, however, these cases simply do not provide support for Petitioner's argument. The Court further notes that the Sixth Circuit in Mars v. United States, 615 F.2d 704 (6th Cir. 1980), limited the holding in Stroble and specifically stated that the Court in Stroble "was not presented with the issue of cognizability of IAD violations under § 2254" and that "the Stroble decision [is] not dispositive of the scope of § 2254 or § 2255 relief." 615 F.2d at 707 n.9.

Petitioner further argues that because the language of 28 U.S.C. §§ 2241(c)(3) and 2254(a) permits habeas corpus relief when a prisoner is in custody in violation of "the laws or treaties of the United States," this Court should correct the state courts' erroneous decisions on his IAD claims and grant him habeas corpus relief. He contends that his claims involve important and fundamental violations of federal statutory law and aggravating circumstances exist which warrant relief. See Brief in Support of Petition (Docket Entry No. 2), at 18-21.

Although it is well-settled that the provisions of the IAD are laws of the United States, as well as laws of the individual states, see Reed, 512 U.S. at 347; Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), Petitioner's argument has no merit in light of his specific claims. The Courts in Reed

12

and Matheny essentially addressed the argument made by Petitioner and rejected the view that any violation of the IAD amounts to a fundamental violation warranting habeas corpus relief. The Courts in Reed and Matheny set out the narrow circumstances in which technical violations of the statutory law contained in Article IV of the IAD rise to the level necessary to trigger relief under Section 2254.[7]

With respect to an alleged violation of Article IV(c), the United States Supreme Court in Reed stated:

> a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement.

512 U.S. at 352. In the instant action, Petitioner has not shown that his claim falls within this narrow exception. He has not shown that his counsel raised an objection, at the time the trial was set, to setting the trial date beyond 120 days from his arraignment. Although Petitioner's defense counsel filed a motion to dismiss in his state criminal case on October 13, 2003, see Addendum No. 1, Volume I (Docket Entry No. 13-1), at 31-39), this motion was filed well beyond the 120 day time frame. As the

---

[7] The two cases upon which Petitioner primarily relies to support his argument that the alleged IAD violations entitle him to habeas corpus relief, Alabama v. Bozeman, 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001), and U.S. v. Mauro, supra, are significantly distinguishable. The petitioners in those two cases were not seeking collateral relief under 28 U.S.C. § 2254 but instead raised their claims in petitions for writs of certiorari from the denial of their direct appeals.

13

Supreme Court in Reed noted, a habeas petitioner must show that he did more than merely complain about the setting of a trial only after the 120 days had already run. 512 U.S. at 348-51. Petitioner has also not shown that the second requirement for the Reed exception is satisfied because he has not shown that he suffered any actual prejudice attributable to the setting of his trial date beyond the 120 day time period.[8]

With respect to the Article IV(e) claim, the Sixth Circuit in Matheny stated:

> we join the clear majority of the circuits in holding that, in the absence of exceptional circumstances, a claimed violation of Article IV(e) of the IAD is not a fundamental defect which is cognizable under 28 U.S.C. § 2254.

835 F.2d at 675. While the Sixth Circuit has not specifically addressed what situations amount to "exceptional circumstances," it is clear to the Court that the instant action does not fall within that narrow category. The undisputed facts show that Petitioner was never physically returned to the location of his original incarceration in Kentucky and that he remained at all times incarcerated at the CJC between his arraignment on the state charges and the conclusion of his criminal trial. His entire Article IV(e) argument is based upon whether he was in the

---

[8] The record shows that at least one continuance in the criminal trial date was requested by defense counsel when counsel filed a motion for continuance on June 23, 2003. See Addendum No. 1, Volume I (Docket Entry No. 13-1), at 10-12.

14

"custody" of the State of Tennessee or the U.S. Marshal during the time he was at the CJC. This factual question cannot be resolved by the record before the Court.[9] However, because Petitioner remained in Tennessee and was never actually returned to Kentucky, the practical purpose of the IAD was achieved regardless of which entity had "custody" of Petitioner while he was at the CJC. Petitioner was not "shuttled" anywhere. He has not pointed to any case which is factually analogous to his case and which supports his legal theory, and he certainly has not shown that any exceptional circumstances exist in his case warranting habeas corpus review of this claim.

The Court also notes that there is an unresolved issue as to whether the provisions of the IAD even applied to Petitioner upon his transportation from Kentucky since it is not clear from the record whether he was being held in Kentucky at his permanent place of imprisonment or whether he was being held in a temporary facility awaiting transportation to a permanent facility for

---

[9] In the Report and Recommendation entered September 24, 2008, the Court briefly recounted the facts upon which Petitioner relied, including that "Petitioner was then [after the August 29, 2002, arraignment] returned to federal custody until October 13, 2003, when he was transported to the Davidson County Criminal Court for trial." See Docket Entry No. 24, at 2. That statement was made in reliance on Petitioner's rendition of the facts in his Petition and was not essential for a ruling on Respondent's motion to dismiss. After having made a more thorough review of the record, it is not clear to the Court in whose technical custody Petitioner was held between August 29, 2002, and October 13, 2003, but it is clear that he was physically in custody in Tennessee during that time period.

15

incarceration pursuant to the sentence imposed by the Eastern District of Kentucky.

In <u>United States v. Taylor</u>, 173 F.3d 538 (6th Cir. 1999), the Sixth Circuit Court of Appeals found that an inmate had not "entered upon a term of imprisonment in a penal or correctional institution" under the IAD and, thus, the IAD was not triggered when the inmate was being held at a local facility awaiting transfer to the location of his permanent incarceration at the time the detainer against him was lodged. 173 F.3d at 540-41. <u>See</u> <u>also</u> <u>Jenkins</u>, 394 F.3d at 413.[10]

## C. Independent Constitutional Claims

Petitioner attempts to bootstrap constitutional claims onto his two IAD claims by arguing that violations of Articles IV(c) and (e) caused Fourteenth Amendment violations of his constitutional rights to due process and equal protection, a Fifth Amendment violation because the state criminal indictment was void, and a Sixth Amendment violation of his right to a speedy trial. <u>See</u> Petitioner's Brief in Support of the Petition (Docket Entry No. 2), at 9-14. Such claims are meritless to the extent that the constitutional claims are premised upon a violation of the IAD.

---

[10] The Court acknowledges that Respondent conceded in a filing before the Tennessee Supreme Court that the IAD was, in fact, triggered in Petitioner's criminal case. <u>See</u> Addendum No. 2, Document 10 (Docket Entry No. 13-7), at 189-91. Respondent's concession, however, is not determinative of this legal issue.

16

To the extent that the petition can be read to assert independent constitutional claims, Petitioner has not set forth meritorious claims. First, such claims have not been exhausted. Independent constitutional claims were not presented to the state courts as part of Petitioner's direct appeal and the only claims raised by Petitioner before the state courts were claims premised upon violations of the IAD, not upon alleged violations of the Constitution. For a claim to have been fully and fairly presented, it must have been presented as an issue of federal constitutional law, not state law. Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).

Second, Petitioner has not even argued, let alone shown, that the facts of his case warrant habeas corpus relief based upon independent constitutional violations, as opposed to violations of the IAD. Any Fifth Amendment claim that the indictment is void is meritless. It is well-settled that the Fifth Amendment guarantee of a grand jury indictment has not been applied to the states. See Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Williams v. Haviland, 467 F.3d 527, 531-35 (6th Cir. 2006). Additionally, Petitioner certainly has not shown that he is entitled to relief under the prevailing precedents for a speedy trial claim under the Sixth Amendment, Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191-92, 33 L.Ed.2d 101 (1972), and he has

17

not made a cognizable argument regarding a due process or equal protection violation under the Fourteenth Amendment.

## R E C O M M E N D A T I O N

Based on the foregoing, the Court respectfully RECOMMENDS that Petitioner's Motion (Docket Entry No. 20) for Summary Judgment be DENIED, Respondent's Motion (Docket Entry No. 34) to Dismiss be GRANTED, and the Petition for Relief under Section 2254 be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge