UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KENNETH D. THOMAS, | ) | |
| | ) | |
| Petitioner, | ) | No. 3:08-0274 |
| v. | ) | JUDGE ECHOLS |
| | ) | |
| WARDEN JAMES FORTNER, et al., | ) | |
| | ) | |
| Respondents. | ) | |

# ORDER

This is a habeas case brought by a state prisoner, Kenneth D. Thomas ("Petitioner") under 28 U.S.C. § 2254. Pending before the Court are the Report and Recommendation entered by the United States Magistrate Judge on January 30, 2009 (Docket Entry No. 44); Petitioner's Motion for Summary Judgment (Docket Entry No. 20), to which Respondents did not file a response in opposition; Respondents' Motion to Dismiss (Docket Entry No. 34), to which Petitioner filed a *pro se* response in opposition (Docket Entry No. 39); Petitioner's Objection To The Magistrate's Report and Recommendation (Docket Entry No. 47) filed through counsel, to which Respondents did not file a response; and Petitioner's Motion for Evidentiary Hearing (Docket Entry No. 48), to which Respondents filed a response in opposition (Docket Entry No. 50).

When a party makes timely objections to an R&R, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3). The Court has conducted a *de novo* review and determination of the case.

1

The Magistrate Judge entered an 18-page R&R which thoroughly and accurately reviews the parties' contentions and recommends dismissal of the habeas petition. The Court will not reiterate all of the information included in the R&R, but will address only important facts and issues to explain the Court's reason for accepting the R&R and overruling Petitioner's objection.

Petitioner was convicted on federal bank fraud charges and held in federal custody in Kentucky. The District Attorney General for Davidson County, Tennessee lodged a detainer against Petitioner on May 31, 2002, to assure that he would be returned to this state to face charges of attempted first degree murder and felony murder. On August 27, 2002, the Davidson County Criminal Court, on request of the District Attorney General, issued a writ of habeas corpus ad prosequendum, which ordered the Davidson County Sheriff's Department to take temporary custody of Petitioner and transport him to Nashville, Tennessee for court proceedings in the state criminal case. The writ of habeas corpus ad prosequendum provided in part:

> The State authority will return the within named prisoner to the custody of the U.S. Marshal by 5:00 p.m. this date, or at the end of the court proceeding. . . . The State authority will upon termination of the period of temporary custody, or upon the demand of the United States Marshal return and transport promptly such prisoner to the custody of the United States Marshal.

(Docket Entry No. 1-1, Ex. B.)

Petitioner appeared in Nashville for his arraignment on the state charges on August 29, 2002. Petitioner stated in a *pro se* state court brief that he remained physically at the Nashville Criminal Justice Center from the day of his arraignment on the state charges until he was convicted in state court in October 2003 on the state charge of felony murder, for which he received a life sentence. (Docket Entry No. 13-7, Addendum No. 2, Document No. 1 at 14.) He alleges, however, that he was shuttled repeatedly between state and federal custody to face both the state proceedings on the

2

murder charges as well as pretrial proceedings on a federal firearm case that was pending in the Middle District of Tennessee and later dismissed after he was convicted in state court of felony murder. Petitioner claims that such actions violated his rights under the anti-shuttling and speedy trial provisions of the Interstate Agreement on Detainers ("IAD"), Tenn. Code Ann. § 40-31-101, Article IV(c) &(e), and that such violations should result in mandatory dismissal of the state felony murder indictment and conviction against him.

The Court agrees with the Magistrate Judge that Petitioner exhausted his IAD claims in state court, but that the claims are not cognizable in a habeas corpus petition brought under § 2254 absent exceptional circumstances, and no such exceptional circumstances are shown here. See Reed v. Farley, 512 U.S. 339, 352 (1994) (addressing Article IV(c) claim in § 2254 case); Browning v. Foltz, 837 F.2d 276, 283 (6th Cir. 1988) (addressing Article IV claims in § 2254 case); Metheny v. Hamby. 835 F.2d 672, 675 (6th Cir. 1987) (addressing Article IV(e) claim in § 2254 case). The case upon which Petitioner relies to claim that habeas relief is available, Stroble v. Anderson, 587 F.2d 830 (6th Cir. 1978), was decided well before the Supreme Court's opinion in Reed. Also, the Sixth Circuit has observed that, in Stroble, the "court was not presented with the issue of cognizability of IAD violations under § 2254 nor did we decide that issue." Mars v. United States, 615 F.2d 704, 707 n.9 (6th Cir. 1980) (holding IAD claims are not cognizable in § 2255). Further, the Supreme Court's decision in Alabama v. Bozeman, 533 U.S. 146 (2001), on which Petitioner relies, is distinguishable because that case was decided on direct appeal from state court and did not involve a collateral proceeding. The opinions in Reed, Browning, and Metheny make clear that Petitioner cannot obtain habeas relief on the facts of this case based on alleged IAD violations.

The federal government qualifies as a "sending state" or a "receiving state" under the IAD. United States v. Mauro, 436 U.S. 340, 354 (1978). In this case, the federal government was the "sending state" when the Davidson County District Attorney, on behalf of the "receiving state," requested temporary custody of Petitioner for purposes of resolving state charges. Article IV(a) of the IAD provides in pertinent part:

> The appropriate officer of the jurisdiction in which an untried indictment . . . is pending shall be entitled to have a prisoner against whom the appropriate officer has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V(a) hereof[.]"

Article V(a) of the IAD provides in pertinent part:

> In the case of a federal prisoner, the appropriate authority in the receiving state shall be entitled to temporary custody as provided by this agreement or to the prisoner's presence in federal custody at the place for trial, whichever custodial arrangement may be approved by the custodian.

Thus, under the express language of Article V(a), the State of Tennessee was entitled to temporary custody of Petitioner as provided in the IAD *or* to his presence *"in federal custody at the place of trial*, whichever custodial arrangement may be approved by the custodian." Thus, even accepting, as Petitioner argues, that he was taken from federal custody in Kentucky, arraigned in Nashville in state court, and thereafter returned to federal custody while confined physically in Nashville, the anti-shuttling provision, Article IV(e) of the IAD, was not violated. See United States v. Shigemura, 726 F.2d 380, 381 (8th Cir. 1984) (denying § 2255 relief on alleged IAD violation where prisoner was confined in St. Louis County jail but shuttled between state and federal custody). This remains true even if, as Petitioner alleges, he was transferred between state and federal custody on numerous occasions between August 2002 and October 2003. As the Magistrate Judge pointed out, at all times after Petitioner was brought to Nashville at the State's request, Petitioner remained physically in

4

Nashville at the place of his state trial, even if he was in federal custody part of the time. He was not returned to the original place of federal imprisonment in Kentucky, and no violation of Article IV(e) occurred.

The speedy trial contention under Article IV(c) of the IAD is also unavailing. There is no doubt that Petitioner's state trial did not take place within 120 days after he arrived in Nashville. But as the Magistrate Judge noted, Petitioner has not shown that his state criminal attorney raised an objection to trying the case beyond the 120-day period when the state court first set the trial date. The Supreme Court held in Reed that a state court's failure to observe the 120-day rule of Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set. Reed, 512 U.S. at 352. Moreover, Petitioner's attorney moved for continuance of a second trial date of July 2003 in order to have more time to prepare for the trial. Petitioner's attorney did not raise the speedy trial issue until the morning of trial, long after the 120-day period had expired. The state judge denied the motion to dismiss and proceeded with the murder trial. "When a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists. An unwitting judicial slip of the kind involved here ranks with the nonconstitutional lapses we have held not cognizable in a postconviction proceeding." Reed, 512 U.S. at 349.

Finally, Petitioner has not established his entitlement to or the need for an evidentiary hearing in federal court. Under 28 U.S.C. § 2254(e)(2), the Court may not grant an evidentiary hearing unless Petitioner demonstrates that his claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable or (2) a factual predicate that could not have been previously discovered through the exercise of due

5

diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found Petitioner guilty of the underlying offense. Petitioner does not argue the applicability of any new rule of constitutional law, and the factual predicate for his IAD claims should have been discovered and developed through the exercise of due diligence in his state court proceedings. Thus, no evidentiary hearing will be granted. Accordingly,

(1) Petitioner's Objection To The Magistrate's Report and Recommendation (Docket Entry No. 47) is hereby OVERRULED;

(2) Petitioner's Motion for Evidentiary Hearing (Docket Entry No. 48) is hereby DENIED;

(3) the Magistrate Judge's Report and Recommendation (Docket Entry No. 44) is hereby ACCEPTED;

(4) Petitioner's *pro se* Motion for Summary Judgment (Docket Entry No. 20) is hereby DENIED;

(5) Respondents' Motion to Dismiss (Docket Entry No. 34) is hereby GRANTED;

(6) the habeas corpus petition is hereby DISMISSED WITH PREJUDICE;

(7) entry of this Order on the docket shall constitute entry of final Judgment in accordance with Federal Rules of Civil Procedure 58 and 79(a); and

(8) because Petitioner cannot demonstrate that jurists of reason would find it debatable whether the Court is correct in its ruling, a certificate of appealability will not issue. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

It is so ORDERED.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE